UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-738-CRS-CHL

SUZETTE SCOTT-WARREN,                                            Plaintiff,

v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,              Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on a motion to compel (DN 17) filed by Plaintiff Suzette

Scott-Warren ("Plaintiff"). The motion to compel has been briefed extensively by both parties.

Defendant Liberty Life Assurance Company of Boston ("Defendant") has filed a related motion

for leave to file a brief addressing certain supplemental authority (DN 45). Both motions are ripe

for review. For the following reasons, Plaintiff's motion to compel (DN 17) is **granted in part**

**and denied in part** and Defendant's motion to file a brief on supplemental authority (DN 45) is

**granted**.

## BACKGROUND

### 1. Motion to Compel

At the heart of this dispute is a disagreement regarding the scope of discovery in ERISA

cases. Plaintiff asserts a breach of contract claim pursuant to ERISA, specifically 29 U.S.C. §

1132(a)(1)(B), in relation to Defendant's denial of long-term disability benefits. Plaintiff filed

the motion to compel due to her conviction that she is entitled to discovery in particular areas

beyond the administrative record. Defendant filed a response in opposition and Plaintiff filed a

reply. (DN 22, 30.) Plaintiff subsequently filed two notices of supplemental authority (DN 36,

49), which led Defendant to file a motion for leave to file a brief (DN 45) addressing one of the

cases, *Davis v. Hartford Life & Accident Ins. Co.*, 2015 U.S. Dist. LEXIS 158313 (W.D. Ky. Nov. 24, 2015).  Plaintiff filed a response and Defendant a reply in relation thereto.  (DN 46, 48.) Two other discovery-related motions are also pending in this case and will be decided by separate order or orders.  (*See* DN 26 (Defendant's motion for protective order in relation to Rule 30(b)(6) deposition noticed by Plaintiff); DN 28 (Plaintiff's motion for sanctions in relation to Defendant's nonappearance for the 30(b)(6) deposition).)

     a.   Procedural History

In addition to her breach of contract claim pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff asserted a claim of "disgorgement" under 29 U.S.C. § 1132(a)(3).  Defendant filed a motion for partial summary judgment (DN 20) in relation to the disgorgement claim.  Senior District Judge Charles R. Simpson III granted Defendant's motion for partial summary judgment, thereby disposing of the claim pursuant to Section 1129(a)(3).  (*See* DN 50 (memorandum opinion and order granting partial summary judgment).)  Plaintiff's sole surviving claim is the Section 1132(a)(1)(B) claim.  Consistent with Senior Judge Simpson's ruling, any arguments in favor of discoverability that are based on the Section 1129(a)(3) claim are meritless.  Defendant need not respond to any discovery requests that are expressly related to the disgorgement claim, and Plaintiff shall not seek any additional discovery on the basis of that claim.  Accordingly, with the exception of passing references to the now-defunct claim for the sake of clarity, the balance of the instant memorandum opinion addresses the motion to compel solely as it relates to Plaintiff's Section 1132(a)(1)(B) breach of contract claim.

Pursuant to the scheduling order currently in effect in this matter (DN 14), discovery was to be completed no later than October 30, 2015.  On March 19, 2015, Plaintiff served on

2

Defendant interrogatories (DN 17-1) and requests for production (DN 17-2). Defendant responded to both on May 21, 2015. (DN 17-3 (answers to interrogatories); DN 17-4 (responses to requests for production).) Defendant later supplemented its answers to interrogatories and responses to requests for production. (DN 17-5, 17-6 (both served on June 29, 2015); DN 17-7 (served on August 24, 2015).) On September 22, 2015, Plaintiff filed the motion to compel (DN 17). Since that time, the parties have been embroiled in a series of interrelated discovery disputes and all meaningful progress in this case has come to a halt.

     b.  <u>Motion to Compel</u>

Plaintiff asserts that upon her cessation of work in September 2013, Defendant found that she was disabled and provided her with benefits from September 2013 to March 2014. (DN 17 at 2.) Then, according to Plaintiff, Defendant "abruptly terminated her monthly disability insurance benefits." (*Id.*) Plaintiff alleges that Defendant actively sought to terminate her claim for its own financial gain, relying upon a third-party vendor to help it substantiate its decision. She further alleges that that third-party vendor, CompPartners, "has shown a high, if not absolute propensity of supporting [Defendant's] decisions, so as to maintain the business it receives from [Defendant]." (*Id.* at 2-3.) Plaintiff represents that Defendant has refused to comply with its discovery obligations pursuant to the Federal Rules of Civil Procedure despite multiple requests by her counsel. She requests the following relief: (1) substantive responses to written discovery; (2) cooperation in scheduling depositions; (3) her fees and costs related to the motion to compel; and (4) an instruction to Defendant that failure to comply with the Court's order on the motion to compel may result in default judgment. (*Id.* at 3.)

Plaintiff acknowledges that the scope of permissible discovery related to Section 1132(a)(1)(B) claims is narrower than that traditionally permitted by the Federal Rules of Civil Procedure. (*See, e.g.*, DN 17 at 4 ("Ms. Scott-Warren's requested discovery is narrowly tailored to fall within these general discovery rules, as well as the *scope* of discovery in ERISA litigation."); *id.* at 5 ("[ . . . ] Ms. Scott-Warren recognizes the limitation on the scope of discovery in ERISA 502(a)(1)(B) benefits cases [ . . . ]").) In her motion to compel, Plaintiff addresses each disputed interrogatory and request for production. The Court takes the same approach below.

c.  Response

Defendant's position is that Plaintiff is not entitled to any discovery outside of the administrative record. It disputes Plaintiff's characterization of recent decisions of this Court and the Sixth Circuit regarding the ability of ERISA plaintiffs to obtain discovery beyond the administrative record by alleging conflicts of interest on the part of their insurers. Defendant goes on to argue that, even if the Court finds that limited discovery is permissible in this case, Plaintiff's discovery requests go far beyond the limited scope of permissible discovery. Mirroring the structure of the motion to compel, Defendant then addresses the individual discovery requests propounded by Plaintiff. Finally, Defendant contends that Plaintiff's request for attorneys' fees and costs is meritless because its position in response to the discovery requests is substantially justified and because it has not violated any court order.

d.  Reply

Plaintiff filed a detailed reply (DN 30) in support of the motion to compel. Much of the reply relies upon an argument that discovery related to claims under Section 502(a)(3) is not

limited by anything other than the intentionally broad scope of Rule 26 of the Federal Rules of Civil Procedure.  As Senior Judge Simpson recently granted Defendant's motion for summary judgment as to that claim, the Court need not address that argument.  Plaintiff argues that she has met her minimal burden to entitle her to discovery by alleging in her complaint that Defendant has an inherent conflict of interest as a result of its serving as underwriter, insurer, and administrator of the disability insurance policy at issue in this case.  Further, she responds to Defendant's arguments in relation to the individual interrogatories and requests for production. Finally, Plaintiff maintains that she is entitled to an award of her fees and costs because Defendant's conduct necessitated the filing of the motion to compel.

### 2.  Supplemental Authority

Following her submission of the reply, Plaintiff filed two notices of supplemental authority.  (*See* DN 36 (regarding *Davis v. Hartford Life & Accident Ins. Co.*, 2015 U.S. Dist. LEXIS 158313 (W.D. Ky. Nov. 24, 2015)); DN 49 (regarding *Owens v. Liberty Life Assur. Co. of Boston*, 2016 U.S. Dist. LEXIS 51350 (W.D. Ky. Jan. 15, 2016)).)  First, Plaintiff provides the Court with substantial excerpts from the *Davis* decision, in which Senior District Judge Thomas B. Russell granted in part a motion to compel that Plaintiff represents was similar to the one filed in this case.  Second, in the same format, Plaintiff provides the Court with excerpts from the *Owens* decision entered by Magistrate Judge H. Brent Brennenstuhl.  Plaintiff asserts that *Davis* and *Owens* provide persuasive authority for the propriety of her discovery requests in this case.

### 3.  Motion for Leave to File Brief regarding *Davis* Decision

Plaintiff filed her notice of supplemental authority regarding *Davis* (DN 36) on December 1, 2015.  On December 18, 2015, Defendant filed a motion for leave to file a brief addressing

*Davis* (DN 45).  Defendant argues that the *Davis* decision is factually distinguishable from this case and that Plaintiff omitted from her supplemental filing "several issues on which *Davis* is actually favorable to Defendant's position on the scope of discovery in this case."  (*Id.* at 45.)  It argues that in fairness, it should have the opportunity to address these issues.  Defendant tendered a proposed brief (DN 45-1) as an attachment to the motion.  The proposed brief provides Defendant's position as to why *Davis* supports its legal theories regarding discovery in this case, as well as why this case is factually distinguishable on a number of levels.

Plaintiff filed a response in opposition (DN 46).  She argues that briefing on the motion to compel is complete and that Defendant now seeks to reargue that motion on the merits. She further argues that *Davis* is directly on point and that Defendant's motion is one out of a long line of actions by Defendant to obstruct and delay the progression of this case.

Defendant filed a reply in support of its motion (DN 48).  Defendant argues that Plaintiff has presented no valid argument as to why it should not be granted leave to address *Davis*.  It contends that its arguments regarding discovery have been made in good faith and that it has not sought to delay or obstruct these proceedings.  It also disputes Plaintiff's argument that she filed a mere "notice," stating that the "notice" actually contains selected excerpts and ignores other portions of the opinion that distinguish the two cases or support Defendant's position here.

## DISCUSSION

**1. Motion to Compel**

    a. <u>Legal Standard</u>

        i. *Discovery in Matters Governed by ERISA*

The initial question that must be addressed before turning to Plaintiff's individual

discovery requests is whether she may obtain any discovery outside of the administrative record. "Generally, parties in a civil action may obtain discovery regarding any unprivileged matter that is relevant to the claim or defense of any party." *Likas v. Life Ins. Co. of N. Am.*, 222 Fed. Appx. 481, 485 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(1)). In ERISA actions, however, discovery is "substantially limited." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *2 (citing *Likas*, 222 Fed. Appx. at 485). "Discovery under ERISA is a largely unsettled area of law as federal courts continue to vary the scope of discovery permitted in ERISA actions even after a Supreme Court case on the matter, *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)." *Id.* (citing *Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 510 (W.D. Ky. 2010)) (internal citations omitted).

Typically, in ERISA actions, discovery is not permitted outside of the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) (Gilman, J., concurring). "This rule serves 'a primary goal of ERISA [which is] to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously,' *Perry v. Simplicity Eng'g. Div. of Lukens Gen. Indus.*, 900 F.2d 963, 967 (6th Cir. 1990), 'and any routine consideration of evidence outside that presented to plan administrators would undermine Congress's intent.'" *Davis*, 2015 U.S. Dist. LEXIS 158313 at *3 (quoting *Thornton v. W. & S. Life Ins. Co. Flexible Benefits Plan*, 2010 U.S. Dist. LEXIS 7221, *1 (W.D. Ky. Jan. 28, 2010)). "An exception is recognized, however, when evidence outside the record is 'offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.'" *Johnson*, 324 Fed. Appx. at 466 (quoting *Wilkins*, 150 F.3d at 619 (Gilman, J., concurring)).

Having established that limited discovery may be permitted in an ERISA case where a claimant alleges bias on the part of the plan administrator, as Plaintiff does in this case, the Court's next task is to identify the threshold for a claimant to establish a right to such discovery. "Prior to the Supreme Court's decision in *Glenn*, courts in the Sixth Circuit did not have a uniform standard for what triggered the exception to the general rule that under ERISA no discovery may occur outside the administrative record." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *4 (citing *Busch v. Hartford Life & Accident Ins. Co.*, 2010 U.S. Dist. LEXIS 101881 at *1 (E.D. Ky. Sept. 27, 2010); *Thornton*, 2010 U.S. Dist. LEXIS 7221 at *2; *Crider v. Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS 6715, *3-4 (W.D. Ky. Jan. 29, 2008)). In *Glenn*, the Supreme Court provided guidance on the issue, holding that "when a plan administrator both evaluates claims for benefits and pays benefits claims," there is a *per se* conflict of interest. *Glenn*, 554 U.S. at 112.

The Supreme Court further stated in *Glenn* that it is not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict . . . [because] special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress." *Id.* at 116. The Sixth Circuit has provided limited guidance in the aftermath of *Glenn*; however, "it is logical to assume that the Supreme Court meant for lower courts to allow some discovery beyond the administrative record when the conflict of interest is present." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *5 (quoting *McQueen v. Life Ins. Co. of N. Am.*, 595 F. Supp. 2d 752, 755 (E.D. Ky. 2009)).

District courts in the Sixth Circuit have taken two contrasting approaches following *Glenn*. "Some courts have found that the mere presence of an evaluator/payor conflict of interest is sufficient to allow discovery outside of the administrative record." *Id.* at *6 (citing *Mullins*, 267 F.R.D. at 512). These courts "reason that the act of denying discovery until there has been an initial showing of bias 'essentially handcuffs the plaintiff, who . . . will rarely have access to any evidence beyond a bare allegation of bias, in the absence of discovery." *Kasko v. Aetna Life Ins. Co.*, 33 F. Supp. 3d 782, 786-87 (E.D. Ky. 2014) (quoting *Kinsler v. Lincoln Nat. Life Ins. Co.*, 660 F. Supp. 2d 830, 836 (M.D. Tenn. 2009)). Conversely, some courts "have found that an allegation of bias alone is insufficient[;] [i]nstead, a plaintiff must make a sufficient factual showing to expand discovery beyond the administrative record." *Id.* at 787.

In the November 2015 *Davis* opinion, Senior Judge Russell stated as follows: "Having reviewed both approaches, this Court is persuaded by the case law followed by most fellow courts in Kentucky that the mere existence of an evaluator/payor conflict of interest is sufficient to allow discovery outside of the administrative record." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *8. Further, the Court "caution[ed] that discovery is to be limited to the conflict of interest and allegations of bias." *Id.* at *9 (citing *Brainard v. Liberty Life Assurance Co. of Boston*, 2014 U.S. Dist. LEXIS 178492, *4 (E.D. Ky. Dec. 30, 2014)). In an opinion entered on March 21, 2016, *Myers v. Anthem Life Ins. Co.* 2016 U.S. Dist. LEXIS 37411, at *17 (W.D. Ky. March 21, 2016), the undersigned reached the same conclusion, stating as follows: "Likewise, this Court has considered the two approaches employed by district courts in the Sixth Circuit and concludes that the 'mere existence' of a conflict of interest is sufficient to allow *some* discovery outside of the administrative record."

9

In her complaint, Plaintiff alleges that Defendant "is the underwriter, insurer and administrator of the disability insurance policy at issue in this lawsuit." (DN 1 at 2, ¶ 7.) The Court finds that this is sufficient to allege that a conflict of interest exists. Accordingly, and consistent with Senior Judge Russell's analysis in *Davis* and the undersigned's conclusion in *Myers*, the Court concludes that because Plaintiff has alleged the existence of a conflict of interest, she is entitled to discovery on particularized areas of inquiry.

Generally, courts have allowed discovery regarding whether (i) there is a history of biased claim denials; (ii) the employer has made measures to reduce bias and promote accuracy; and (iii) company policies reward or encourage denials. *Kasko*, 33 F. Supp. 3d at 788 (citing *Raney v. Life Ins. Co. of N. Am.*, 2009 U.S. Dist. LEXIS 34098, *3 (E.D. Ky. Apr. 20, 2009)). As in the *Davis* and *Myers* opinions, the Court looks to another recent decision from our district, *Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 408 (W.D. Ky. Aug. 5, 2015), for a list of "permitted areas of inquiry – topics on which discovery related to an inherent conflict of interest may be had by an ERISA plaintiff." *Busch*, 2010 U.S. Dist. LEXIS 101881, at *9 (quoting *Mullins*, 267 F.R.D. at 513). That list includes the following:

- "incentive, bonus or reward programs or systems formal or informal for any employees involved in any meaningful way in reviewing disability claims." *Myers v. Prudential Ins. Co. of Am.*, 581 F. Supp. 2d 904, 914 (E.D. Tenn. 2008).

- "contractual connections between [plan administrator/payor] ... and the reviewers utilized in Plaintiff's claim . . . and financial payments paid annually to the reviewers from the [administrator/payor]." *Pemberton v. Reliance Standard Life Ins. Co.*, 2009 U.S. Dist. LEXIS 2070, (E.D. Ky. Jan. 13, 2009).

- "statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted." *Id.*

10

- "number of times the reviewers found claimants able to work in at least a sedentary occupation or found that claimants were not disabled." *Id.*

- "documentation of administrative processes designed only to check the accuracy of grants of claims (limited to claims guidelines actually consulted to adjudicate plaintiff's claims)."

*Gluc*, 309 F.R.D. at *17-18 (quoting *Bird v. GTX, Inc.*, 2009 U.S. Dist. LEXIS 106301, *8 (W.D. Tenn. 2009)).

Courts have also identified specific categories of inquiry that are *not* within the areas of permitted discovery:

> Courts typically refuse to permit discovery into areas falling under the general category of reviewer credibility. *Thornton*, 2010 U.S. Dist. LEXIS at *3.   Areas such as employee pay records and personnel files are not discoverable. *Hays v. Provident Life and Acc. Life Ins. Co.*, 623 F. Supp. 2d 840, 845 (E.D. Ky. 2008) (citing *Myers*, 581 F. Supp. 2d at 915).   The professional background of claim reviewers; whether reviewers have civil or criminal claims for disciplinary action; or, the history of patient treatment by medical reviewers also is not subject to discovery. *Raney*, 2009 U.S. Dist. LEXIS 34098 at *3; *see also Pemberton*, 2009 U.S. Dist. LEXIS 2070 at *4 ("[I]nformation regarding the training and qualifications of the reviewers is unlikely to lead to evidence concerning either the conflict of interest or bias [so that] the plaintiff is not entitled to discovery on these issues."); *Bird*, 2009 U.S. Dist. LEXIS 106301 at *3 (improper areas of inquiry include: personnel files, performance reviews and pay records of insurers' employees; and information regarding training and qualifications of reviewers).

*Gluc*, 309 F.R.D. at *18-19.

Bearing in mind the standard set forth above, the Court will address the individual discovery requests propounded by Plaintiff, as well as the sufficiency of the initial and supplemental responses provided by Defendant.  The Court anticipates that this opinion will provide sufficient guidance for the parties to move forward with the discovery process with

11

minimal additional Court oversight.  Nonetheless, Defendant retains the right to assert objections to the discovery requests, and Plaintiff to challenge those objections, provided that both parties' actions are not inconsistent with the instant memorandum opinion and order.

ii.  *Plaintiff's Purported Instructions to Defendant*

Before moving on, the Court is compelled to address one issue common to all of Plaintiff's discovery requests.  At the top of each page of the interrogatories and requests for production appears a text box in which Plaintiff purports to instruct Defendant as to certain obligations in relation to its discovery responses.  The instructions provide as follows:

> **<u>Please Note:</u>** If Defendant is unclear or has questions concerning a specific request, as opposed to waiting until the expiration of the 30 day response period, Defendant's counsel should contact Plaintiffs' counsel at an early date to discuss any concerns and/or to obtain any clarification.  Absent any inquiry from Defendant prior to the expiration of the 30 day response period, Defendant shall be deemed to have fully understood each request, to have not required any further clarification or explanation, and to have waived any objections to the request.

(*See* DN 17-1 at 2, *et seq.*; DN 17-2 at 2, *et seq.*)

Plaintiff presumes to take on the role of the Court.  The Federal Rules of Civil Procedure, the Local Rules, and orders of this Court are *the only authorities* for the parties' rights and responsibilities in conducting civil discovery.  Litigants and their counsel may not impose additional or inconsistent obligations on opposing parties.  The Rules do not require Defendant's counsel to contact Plaintiff's counsel before the conclusion of the 30-day response period, regardless of how many objections it may have to the discovery requests.  Nor do the Rules provide that Defendant "shall be deemed" to have done anything included in the last sentence of Plaintiff's instructions if its counsel does not contact Plaintiff's counsel.  *See* Fed. R. Civ. P.

33(b)(2) ("The responding party must serve its answers and any objections within 30 days after being served with the interrogatories.  A shorter or longer time may be stipulated to under Rule 29 *or be ordered by the court*.") (emphasis added); *id.* at (b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity.  Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *see also* Fed. R. Civ. P. 34(b)(2)(A), (C).

In this case, the Court has not imposed on Defendant any obligations that would go beyond the scope of Rules 33 and 34.  The Court has certainly not required Defendant to jump through the hoops that Plaintiff purports to put in Defendant's path.  Accordingly, it is hereby ordered that Defendant may disregard the instructions purportedly issued by Plaintiff in the text boxes appearing at the top of each page of her discovery requests.

    b.  Interrogatories

        i.  *No 1.  Identify each person making and assisting with your Interrogatory answers, including each person's name, address, occupation, current title and relationship to Defendant.*[1]

Interrogatory number 1 is a standard request for information regarding the individual(s) preparing the answers to interrogatories and is permissible under Rule 33 of the Federal Rules of Civil Procedure.  Neither party addresses this interrogatory in relation to the motion to compel.

        ii.  *No. 2.  Identify each person involved in the decision to deny Plaintiff's claim, including each person's name, address, occupation, current title, and relationship to Defendant.*

        iii.  *No. 3.  Identify each person involved in the decision to deny Plaintiff's appeal, including each person's name, address, occupation, current title, and relationship to Defendant.*

---

[1] Defendant's interrogatories and requests for production of documents are located in the record at DN 17-1 and 17-2, respectively.  All discovery requests reprinted herein can be found in those documents.

In interrogatory numbers 2 and 3, Plaintiff requests certain identifying information regarding each person who was involved in Defendant's decision to deny her claim and to deny her appeal. The parties disagree as to whether Defendant has satisfied its discovery obligations with respect to this information. In its answers to interrogatories, Defendant identified three individuals "who either signed the determination letters from Defendant to Plaintiff or reviewed a determination, [were] responsible for making the determination that Plaintiff no longer satisfied the definition of disability or disabled under the Policy and, therefore, that Plaintiff was no longer entitled to LTD benefits under the Policy." (DN 22 at 14-15.) Defendant then provided the names and titles of three individuals and identified the pages in the administrative record at which each decision maker's determinations could be found. One individual was included in Defendant's answers to both interrogatory number 2 and number 3; in each answer, her title is provided as "Appeals Review Consultant." (DN 22 at 14-15.) In its supplemental and second supplemental answers to interrogatories, Defendant provided additional information regarding the relationship between it and the decision makers it authorizes to make decisions as to claims and appeals. It further clarified that any person involved in initial claims denials will not later be involved in appeals determinations. (*See* DN 22-1 at 3.)

Interrogatories very similar or identical to numbers 2 and 3 have been deemed permissible in recent decisions from this district. *See, e.g.*, *Davis*, 2015 U.S. Dist. LEXIS 158313 at *11-14. The Court finds that under the particular circumstances of this case, Defendant has provided sufficient information in its existing responses to interrogatory numbers 2 and 3. This is not a situation in which a defendant attempts to leave the plaintiff to sort through an immense administrative record in search of identifying information regarding

14

decision makers on his or her claim.  Rather, Defendant has directed Plaintiff to precise pages in the administrative record that it represents are responsive to her interrogatories.  *Cf. Mullins*, 267 F.R.D. at 514 ("The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which answers cannot be ascertained by a person unfamiliar with them.") (quoting *In re G-I Holdings, Inc.*, 218 F.R.D. 428, 438 (D. N.J. 2003)). Defendant has clearly identified the individuals involved in denying Plaintiff's claim and her appeal.  It has explained the relationship between those individuals and Defendant as a corporate entity.  Finally, it has alleviated any concerns by Plaintiff as to whether the same individuals were involved in evaluating claims and appeals by stating clearly that no individual is permitted to work on both stages of the process.

Accordingly, the Court concludes that Defendant need not produce any additional information in response to interrogatory numbers 2 and 3.  The motion to compel is **denied** as to interrogatory numbers 2 and 3.

iv. *No. 4.  Provide the material factual basis for each affirmative defense stated in your answer to Plaintiff's complaint.*

Interrogatory number 4 is what is sometimes referred to as a "contention" interrogatory: it "seek[s] to clarify the basis for or scope of an adversary's legal claims."  *Davis*, 2015 U.S. Dist. LEXIS 158313 at *15 (quoting *Starcher v. Corr. Med. Sys., Inc*., 144 F.3d 418, 421 n.2 (6th Cir. 1998) (subsequent procedural history omitted)).  The "general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required."  *Starcher*, 144 F.3d at 421 n.2.  The *Davis* court provided the following guidance regarding contention interrogatories in the ERISA context:

15

As one court stated in its opinion concerning discovery in an ERISA action, "[i]t is widely accepted that 'contention interrogatories' which ask a party to state the facts upon which it bases a claim or defense, are a permissible form of written discovery." *Alexander v. Hartford Life & Acc. Ins. Co.*, 2008 U.S. Dist. LEXIS 27210, *4 (N.D. Tex. Apr. 3, 2008). Furthermore, Rule 33(a)(2) of the Federal Rules of Civil Procedure states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). "[T]he purpose of the discovery rules is to bring to light the parties' positions in an informed and controlled manner that winnows down the resolution of a dispute" to show the factual and legal issues." *Burnett & Morand P'ship v. Estate of Youngs*, No. 3:10-CV-3-RLY-WGH, 2011 U.S. Dist. LEXIS 36916, 2011 WL 1237950, at *3 (S.D. Ind. Apr. 4, 2011). Therefore, when a party is asked to provide "contention type discovery [the party] must identify the witnesses and documents he/she has marshaled . . . and to help illuminate the issues to be resolved as the responses and answers are due." *Id.*

*Davis*, 2015 U.S. Dist. LEXIS 158313 at *15-16.

Defendant must "be able to generally explain the factual basis for each . . . affirmative defense[] pled in its . . . answer." *Barkley v. Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS 11928, *2-3 (N.D. Tex. Feb. 19, 2008). Defendant must provide Plaintiff an explanation of the factual basis for each affirmative defense. It is not sufficient to state that the factual bases for its defenses can be found in the administrative record. See *Davis*, 2015 U.S. Dist. LEXIS 158313 at *16-17 ("'A party who seeks to rely upon the Rule must not only certify that the answer may be found in the records referenced by it, but also must specify where in the records the answer [can] be found.'") (citing Fed. R. Civ. P. 33(d); quoting *Mullins*, 267 F.R.D. at 514-15).

Accordingly, the Motion for Discovery is **granted** as to interrogatory number 4.

> v. *No. 5. Describe in detail Defendant's compensation practices for disability claim unit personnel.*

In interrogatory number 5, Plaintiff requests detailed information regarding Defendant's

16

compensation practices for disability claim unit personnel.   Subject to certain vagueness objections, Defendant responded that it "does not provide its employees with any incentive, remuneration, bonus, award, achievement, or other recognition, based in whole or in part upon the denial or termination of claims[.]."  (DN 17-3 at 6.)  It further stated that "each claim is evaluated based upon the particular policy provisions and information before the administrator." (*Id.*)  Plaintiff argues that this answer is insufficient because it is a self-serving statement from counsel, as well as conclusory.   She requests that the Court order Defendant to produce documents that are specifically identified as responsive to this interrogatory.

Defendant responds that it *did* provide substantive information in response to the interrogatory; that such information was supported by its employee's signed and notarized verification; and requests that if the Court orders it to produce more information, it be permitted to do so "pursuant to an appropriate Protective Order."  (DN 22 at 17.)  In her reply, Plaintiff insists that Defendant has not satisfied its obligations because it has not provided a factual explanation of its compensation and bonus structure despite admitting in its response that it does possess such information.  The Court is inclined to agree.

Critically, Plaintiff requests information regarding compensation *practices*, as opposed to compensation of any particular *individuals*.  The *Davis* court addressed this in detail:

> District courts in the Sixth Circuit have developed a list of permitted areas of inquiry in ERISA discovery.  *Busch*, 2010 U.S. Dist. LEXIS 101881 at *4.  The list includes information relating to "[i]ncentive, bonus or reward programs or systems formal or informal for any employees involved in any meaningful way in reviewing disability claims." *Gluc*, 2015 U.S. Dist. LEXIS 104242 at *6 (citation omitted).  Just as courts have a list of areas of inquiry that are discoverable, courts also have a list of areas of inquiry that are not discoverable in ERISA actions.  *Id.*; *see also Busch* [] at *4.  One area of inquiry into which courts do not allow

> discovery is employee pay records.  *Id.* (first citing *Hays*, 623 F.
> Supp. 2d at 845; then citing *Myers*, 581 F. Supp. 2d at 915).

*Davis*, 2015 U.S. Dist. LEXIS 158313 at *18.  Based on the foregoing, Defendant need not provide any information regarding compensation paid to specific employees, as employee pay records are not discoverable.

However, interrogatory number 5 targets compensation-related programs or systems that apply across the board to its disability claims personnel.  Defendant must provide to Plaintiff information in its possession regarding any incentive, bonus, or reward programs or systems for disability claims personnel.  The information provided thus far by Defendant is insufficient.  Merely stating the ways in which its claims personnel are *not* compensated does not satisfy Defendant's obligations.  Nor does stating that the claims are "evaluated based on the particular policy provisions and information before the administrator."  (DN 17-3 at 6.)  On the contrary, Defendant must provide specific, detailed information on the actual compensation policies applicable to its claims personnel.

Accordingly, the motion to compel is **granted** as to interrogatory number 5.

> vi. *No. 6.  Describe in detail Defendant's performance review procedures for disability claim unit personnel.*

In interrogatory number 6, Defendant requests detailed information regarding Defendant's performance review procedures for disability claim unit personnel.  Defendant's answer was that "the performance of claims review personnel is reviewed no later than the end of the first quarter of each year based on their performance in the previous calendar year."  (DN 17-3 at 7.)  It further responded that such performance reviews are based on "whether or not personnel meet general objectives, such as whether or not they followed appropriate protocols

18

for consistency, applied the correct definition of disability," and a number of other factors.  (*Id.*) Defendant represents that performance reviews "are in no way based on the number of denials or approvals of claims."  (*Id.*)

In the motion to compel, Plaintiff contends that Defendant's answer fails to explain sufficiently how personnel are reviewed.  She focuses her argument the scope of discovery in relation to her subsection (a)(3) claim; as is discussed above, that claim is no longer relevant because Defendant obtained summary judgment.  Defendant argues in its response that it fully answered the interrogatory by setting forth a number of considerations that go into performance reviews and by stating that performance reviews are not linked to employees' rates of claim denials or approvals.  In her reply, Plaintiff again contends that Defendant relies upon conclusory statements of counsel and fails to produce sufficient documentary evidence.

Having considered both parties' arguments and recent case law from this district, the Court is inclined to take a more nuanced approach than that suggested by either party.  "[C]ourts typically have refused to permit discovery into the areas falling under the general category of 'reviewer credibility' (e.g., without limitation, the reviewers' personnel files or performance reviews, disciplinary actions, board certifications, educational and professional backgrounds), as those areas are usually deemed unlikely to lead to evidence of bias or discrimination."  *Thornton*, 2010 U.S. Dist. LEXIS 7221, at *8-9.  As the *Davis* court noted, "some courts' reluctance to grant discovery into a defendant's performance review procedures is tempered when the claimant seeks the information as evidence that a claim's personnel were pressured to deny claims." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *20 (citing *Mulligan*, 271 F.R.D. 584, 594 (E.D. Tenn. 2011)) (internal citation omitted).

19

In *Mulligan*, the Eastern District of Tennessee endorsed a "phased discovery process;" it did not allow discovery of performance reviews because the insurer's policies expressly prohibited consideration of claims outcomes in performance reviews, but it declined to state that performance reviews could never be discoverable. *See Mulligan*, 271 F.R.D. at 594. In *Davis*, the court stated that it was "persuaded by the *Mulligan* court's analysis and as such permit[ted] discovery" of incentive, bonus, or reward programs or systems – as allowed in this case in relation to interrogatory number 5 – and stated that it may "revisit the issue" if that materials produced "contain[] information that suggests the influence of bias." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *20-21. This Court finds this to be a well-reasoned approach. At this juncture, Plaintiff is not entitled to information regarding Defendant's performance review process. However, if discovery related to compensation practices leads to a suggestion of the influence of bias in the disability claims decision process, then the Court is willing to revisit the issue of performance reviews.

Accordingly, the motion to compel is **denied** as to interrogatory number 6.

> vii. *No. 7. Describe in detail Defendant's relationship with CompPartners, including Defendant's efforts to ensure CompPartners provides unbiased medical opinions and to ensure CompPartners complies with the terms of the policy.*

> viii. *No. 8. Describe in detail Defendant's relationship with Taj Jiva ("Jiva"), including Defendant's efforts to ensure Jiva is qualified to render a medical opinion concerning Plaintiff, to ensure Jiva reviewed all necessary records, and to ensure Jiva complied with the terms of the policy.*

In interrogatory number 7, Plaintiff requests detailed information regarding Defendant's relationship with a third party, CompPartners, which provides medical opinions to Defendant as part of Defendant's claims evaluations processes. In interrogatory number 8, Plaintiff requests

similar information in relation to Dr. Taj Jiva, an individual medical reviewer used with whom CompPartners contracted to review Plaintiff's claim. In response, Defendant stated that "CompPartners is a vendor that [it] utilizes when requesting review by a physician board certified in a particular specialty." (DN 17-3 at 8.) It further stated that it does not request a particular physician to review a particular claim; rather it requests review by a physician board certified in a particular specialty. (*Id.*) Defendant went on to provide additional information regarding its purported efforts to ensure that CompPartners provides unbiased medical opinions and complies with the terms of the policy. In response to interrogatory number 8, Defendant incorporated by reference its response to the preceding question regarding CompPartners.

In the motion to compel, Plaintiff argues that she is entitled to more information in order to determine whether Defendant adhered to its fiduciary obligations to ensure that third-parties upon which it relies act in conformance with the terms of the Plan. She further argues that production of such information will allow her to discern whether or not Defendant complied with applicable ERISA regulations, particularly whether they had appropriate training and experience.

The Court concludes that Defendant must produce at least some of the information requested by Plaintiff in interrogatory numbers 7 and 8. "ERISA claimants may seek discovery related to 'third-party vendors whose opinions or reports may have been unduly influenced by financial incentives.'" *Davis*, 2015 U.S. Dist. LEXIS 158313 at *23 (quoting *Gluc*, 2015 U.S. Dist. LEXIS 104242 at *8). "[I]nformation concerning the economic connection between [a third-party reviewer] and [Anthem] is exactly the type of information relating to potential bias that district courts have now determined to be discoverable in this circuit." *Mullins*, 267 F.R.D. at 517-18. The Court notes that "inquiry into the professional qualifications of [third-party]

reviewers appears to remain outside the scope of discovery," however, as the *Mullins* court noted, such credentials are typically set forth on the face of medical reports. *Mullins*, 267 F.R.D. at 517; *see also Davis*, 2015 U.S. Dist. LEXIS 158313 at *23 ("This includes information such as the training and qualifications of the reviewers, whether the reviewers have faced criminal charges, civil suits, or disciplinary action, whether the reviewers failed to become board-certified, or whether the reviewers recently treated patients.") (internal citations omitted).

In answering interrogatory numbers 7 and 8, Defendant shall adhere to the following guidance from the *Davis* court:

> [Defendant] should respond to the interrogator[y] with information concerning its [] connections[, contractual or otherwise,] to the third parties and the financial payments paid to them annually along with information concerning any documentation of administrative processes designed only to check the accuracy of grants of claims. However, [Defendant] is not required to provide any response with regards to the credibility or professional backgrounds of the third parties. [Defendant] is also not required to provide documents pertaining to other claimants as those documents are not relevant to [Plaintiff's] claims, and they would undoubtedly contain confidential information "that could not be produced without raising serious HIPAA and privacy concerns that make production of such documents far more burdensome than potentially relevant."

*Davis*, 2015 U.S. Dist. LEXIS 158313 at *24 (quoting *Mullins*, 267 F.R.D. at 522).

Finally, to the extent that any of the information requested in this interrogatory and for which a response is required may be found in the administrative record, Defendant must identify its location therein. *See Mullins*, 267 F.R.D. at 514 ("A party that attempts to rely upon Rule 33(d) with a mere general reference to a mass of documents or records has not adequately responded.").

Accordingly, the motion to compel is **granted** as to interrogatory numbers 7 and 8, subject to the parameters set forth herein.

ix. *No. 9. State each specific reason supporting Defendant's decision to deny Plaintiff's claim, and for each stated reason identify the specific document provided to Plaintiff (prior to the lawsuit) in which Defendant notified Plaintiff of the stated reason and additional information needed for approval of her claim.*

x. *No. 10. State each specific reason supporting Defendant's decision to deny Plaintiff's appeal, and for each stated reason identify the specific document provided to Plaintiff (prior to the lawsuit) in which Defendant notified Plaintiff of the stated reason and the additional information needed for approval of her appeal.*

In interrogatory number 9, Plaintiff requests specific reasons asserted by Defendant for its denial of her claim, as well as identification of specific documents in which Defendant purports to have notified Plaintiff of each such reason. Interrogatory number 10 is identical except that it seeks reasons asserted by Defendant in support of its denial of Plaintiff's appeal. Defendant objected to these interrogatories on the ground that they are outside the scope of permissible ERISA discovery because Plaintiff did not allege bias or lack of due process and the information requested has no bearing on the issue of conflict of interest. It further stated that the substantive answers to these interrogatories can be found in the administrative record and pointed to specific examples within the record.

Plaintiff argues that this answer was insufficient because she requested *specific* reasons that the claim and appeal were denied and in order to ensure that Defendant does not later attempt to rely on a *post hoc* rationale for its decisions. Plaintiff further argues that Defendant failed to adequately cite to the administrative record; she contends that if Defendant relies upon the administrative record, it must provide an exhaustive list of citations thereto. Defendant

23

argues that it provided sufficient, substantive answers to each interrogatory and that Plaintiff has not alleged bias or conflict of interest or otherwise shown that the information she seeks is relevant.  In reply, Plaintiff states that she seeks to narrow the issues in this litigation and again argues that Defendant failed to adequately support its reasoning with citations to the administrative record.

Pursuant to 29 CFR § 2560.503-1(g)(1), "the plan administrator shall provide a claimant with a written or electronic notification of any adverse benefit determination."  This regulation also requires that the "notification shall set forth, in a manner calculated to be understood by the claimant . . . the specific reason or reasons for the adverse determination."  29 CFR § 2560.503-1(g)(1)(i).  This Court concurs with the *Davis* court that a claimant is "entitled to know whether [the defendant] complied with 29 CFR § 2560.503-1(g)(1), particularly if [the defendant] provided him [or her] with notice of the specific reasons for its denial."  *Davis*, 2015 U.S. Dist. LEXIS 158313 at *26.  Consequently, Defendant is required to identify its reasons for denying Plaintiff's claim and appeal and identify or provide copies of documents in which it informed Plaintiff of such reasons.  Defendant need not *restate* each specific reason supporting its decision to deny Plaintiff's claim and appeal, but it must identify the documents in which it previously notified Plaintiff of its reasoning.

Accordingly, the motion to compel is **granted** with respect to interrogatory numbers 9 and 10, subject to the parameters set forth herein.

    xi.  *No. 11.  With respect to CompPartners, identify and state the following:*

        a.  *The number of claims for which Defendant has retained CompPartners to perform a review related to a disability claim or appeal;*

      b.  *The number of times a CompPartners' review has supported that:*
          i.  *A claimant is disabled*
          ii.  *A claimant is not disabled*
          iii.  *A claimant is partially disabled*

      c.  *The total amount Defendant has paid to CompPartners, or paid to a third party, for its reviews.*

    xii.  *No. 12.  With respect to Jiva, identify and state the following:*

      a.  *The number of claims for which Defendant has retained Jiva to perform an examination related to a disability claim or appea;*

      b.  *The number of times a Jiva examination has supported that:*
          i.  *A claimant is disabled*
          ii.  *A claimant is not disabled*
          iii.  *A claimant is partially disabled*

      c.  *The total amount Defendant has paid to Jiva, or paid to a third party, for his examination(s).*

In interrogatory number 11, Plaintiff requests statistical information regarding Defendant's relationship with CompPartners to-date.  Interrogatory number 12 mirrors number 11, seeking the same information regarding Dr. Jiva.  Defendant refused to answer these interrogatories, objecting on the bases of overbreadth and undue burden.  It construes the interrogatories as seeking information on *all* of the disability claims submitted to it and not merely those for which it sought review by CompPartners (or on which Dr. Jiva worked).  (*See* DN 22 at 24-26.)  Plaintiff argues that she is entitled to the information she seeks because it goes to the issue of bias.  In its response, Defendant reiterates its objections and further argues that this type of "batting average" production is not only burdensome, but also ignores the individualized circumstances that factor into each benefits determination.  (DN 22 at 26.)

Consistent with Plaintiff's argument, ERISA plaintiffs use discovery requests like interrogatory numbers 11 and 12 to attempt to establish a history of biased claim administration.

*Kasko*, 33 F. Supp. 3d at 789. "District courts in Kentucky widely acknowledge that the statistical information and financial information sought by [Plaintiff] in interrogator[y numbers 11 and 12] is permissible in discovery." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *29 (citing *Gluc*, 2015 U.S. Dist. LEXIS 104242 at *6; *Kasko*, 33 F. Supp. 3d at 789; *Busch*, 2010 U.S. Dist. LEXIS 101881 at *4).

Looking to the *Davis* court once again, the following reasoning is instructive:

> Courts reason that "if [insurers] relied on third-party reviewers whose opinions or reports may have been unduly influenced by financial incentives, the [c]ourt would benefit from information revealing the compensation arrangement." *Kasko*, 33 F. Supp. 3d at 789 (quoting *Crider v. Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS 6715, *6 (W.D. Ky. Jan. 29, 2008). Notably, "[t]he financial incentives, combined with the physicians' recommendations, could assist the Court in resolving an allegation of biased claim administration." *Id.* Courts have allowed discovery of this statistical information to span up to a ten-year period. *See id.* (citing *Pemberton*, 2009 U.S. Dist. LEXIS 2070, *4.) As this Court stated previously, courts in the Sixth Circuit generally allow discovery of the following:
>
> > • "contractual connections between [plan administrator/payor] ... and the reviewers utilized in Plaintiff's claim . . . and financial payments paid annually to the reviewers from the [administrator/payor]." *Pemberton*, 2009 U.S. Dist. LEXIS 2070, *3.
> >
> > • "statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted." *Id.*
> >
> > • "number of times the reviewers found claimants able to work in at least a sedentary occupation or found that claimants were not disabled." *Id.*
>
> This Court finds the reasoning of its fellow district courts in Kentucky persuasive and, therefore, will require Hartford to provide the financial and statistical information Davis has requested in interrogatories 14-18 with the caveat that Hartford

26

> need not provide information that spans a time period longer than
> ten years.

*Id.* at *29-30.  Similarly, in this case, the Court finds that the information sought in interrogatory numbers 11 and 12 is well within the scope of discovery requests deemed permissible by district courts in the Sixth Circuit.  The Court further finds that it is appropriate to limit Defendant's obligation to respond to a period of ten years.

Accordingly, the motion to compel is **granted** as to interrogatory numbers 11 and 12 for the years 2006 to the present.

  c.  Requests for Production

Plaintiff's requests for production begin with the following general guidelines: (1) the relevant time period for Defendant's responses is November 5, 2009 to the present; and (2) Defendant is asked to produce each material document relating to, or referring to, the areas of inquiry set forth therein.  (DN 17-2 at 3-4.)

  i.  *No. 1.  Claim file.*

Request for production number 1 is not at issue, as Defendant produced the requested documents over objection.  Neither party addresses this request in filings in relation to the motion to compel.

  ii.  *No. 2.  Claim administration materials and manuals used by, or available to, the long term disability claims unit.*

  iii.  *No. 3.  Training materials and manuals utilized by, or available to, the long term disability claims unit.*

Requests for production 2 and 3 seek information regarding claim and training materials and manuals used by or available to the long-term disability claims unit.  Defendant refused to produce any materials in response to these requests based on several objections, including that

27

the requests go beyond the narrow scope of discovery that is permissible based on an allegation of an inherent conflict of interest.  It also objected based on the requests encompassing not only documents utilized by the claims unit, but also other materials *available to* the unit.

Pursuant to 29 CFR 256.503-1(h)(iii), "a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."  However, an ERISA plaintiff is not entitled to global production of all documents relevant to her claim.  As the *Davis* court cautioned, "discovery is to be limited to the conflict of interest and allegation of bias."  *Davis*, 2015 U.S. Dist. LEXIS 158313, *9.  Discovery requests seeking "any and all relevant" documents or other materials are often overbroad and vague.  *See, e.g.*, *Babcock Power, Inc. v. Kapsalis*, 2015 U.S. Dist. LEXIS 172773, *15-16 (W.D. Ky. Dec. 29, 2015).  In relation to the materials requested in numbers 2 and 3, a claimant is entitled to production of administrative materials and manuals used in processing *her claim*, but she is not entitled to production of such materials that were not relied upon in her particular case.  *See, e.g.*, *Davis*, 2015 U.S. Dist. LEXIS 158313, *34 ("[T]his Court found several other cases in which courts have refused to compel production of an insurer's entire manual or guidelines or other administrative materials and instead required production only of those administrative materials used in processing the claimant's claim for benefits.") (citations omitted).

Accordingly, the motion to compel is **granted in part** and **denied in part** as to request for production numbers 2 and 3.  It is **granted** insofar as it requests claim administration and training materials and manuals utilized by the long-term disability claims unit in processing Plaintiff's claim.  It is **denied** insofar as it requests such materials that were merely available to,

28

but not utilized by, the claims unit in processing Plaintiff's claim; it is also denied insofar as it requests such materials that were utilized by or available to the claims unit in relation to other cases.

     iv.   *No. 4.  Master insurance policy.*

     v.   *No. 5.  Certificate of coverage.*

     vi.   *No. 6.  Plan document, including all amendments.*

     vii.   *No. 7.  Summary plan description.*

Request for production numbers 4, 5, 6, and 7 are not at issue, as Defendant produced the requested documents over objection.  (DN 17-4 at 6-8.)  Neither party addresses these requests in filings in relation to the motion to compel.

     viii.   *No. 8.  Compensation, including bonus structure, for each person involved in Plaintiff's claim.*

In request for production number 8, Plaintiff requests specific information and documents related to compensation of the individuals involved with her claim.  Among other objections, Defendant objects that the request goes beyond the narrow scope of discovery permitted based on an allegation of conflict of interest.  As is discussed above in relation to interrogatory number 5, ERISA plaintiffs are not entitled to discovery regarding the compensation of individual employees.

Accordingly, for the reasons set forth above in relation to interrogatory number 5, the motion to compel is **denied** as to request for production number 8.

     ix.   *No. 9.   Performance reviews for each person involved with Plaintiff's claim.*

In request for production number 9, Plaintiff requests specific information and documents

related to performance reviews of the individuals involved with her claim. The Court's analysis above in relation to interrogatory number 5 is equally applicable to request for production number 9.

Accordingly, for the reasons set forth above in relation to interrogatory number 5, the motion to compel is **denied** as to request for production number 9.

x. *No. 10.   Correspondence with legal counsel prior to the date of the lawsuit.*

In request for production number 10, Plaintiff requests production of any correspondence between Defendant and legal counsel prior to the filing of the complaint in this action. In response, Defendant stated, over objection, that it had in its possession no responsive documents. (DN 17-4 at 10-11.) There appears to be no dispute regarding this interrogatory. Neither party addressed it in its briefing on the motion to compel.

xi. *No. 11. Each audio recording.*

In request for production number 11, Plaintiff requests a copy of each audio recording related to her claim or appeal. Defendant refused to produce any materials in response to this request on the basis that, among other things, it goes beyond the narrow scope of permissible discovery in this case. (DN 17-4 at 11.) It further argues that the request is unnecessarily duplicative because "the claims notes [in the administrative record] contain all relevant detail regarding any telephone conversations relating Defendant's review of Plaintiff's claim for benefits and appeal." (*Id.*) Plaintiff argues that Defendant should be required to produce any audio recordings because any notes that appear in the record are insufficient; she says that she should not be expected to "understand the litany of shorthand and abbreviated words [Defendant] employees use in the claim notes." (DN 17 at 21.)

Magistrate Judge Brennenstuhl recently addressed this issue in *Owens*.  He reasoned as follows:

> Discovery at this point in time is governed by the newly-amended version of Fed. R. Civ. P. 26(b)(1) which provides that a party is entitled to discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  It appears that [Defendant] has the only copies of the actual recorded conversations, and there are no verbatim transcriptions.  Consequently, there is no other means whereby [Plaintiff] can compare the notes in the administrative record to the actual conversations to determine the accuracy of those notes.  In this instance, production of the recordings is not duplicative of the notes of the conversations.  *See Jackson v. Willamette Indus. Inc.*, [] 1993 U.S. App. LEXIS 39293, at *2 (5th Cir. April 23, 1993) (Unpub.)  (Request for production of audio recordings was not unreasonably duplic[ative] where one party had the only copy).

*Owens*, 2016 U.S. Dist. LEXIS 51350, at *37-38; *see Owens v. Liberty Life Assur. Co.*, 2016 U.S. Dist. LEXIS 57923, at *14 (W.D. Ky. May 2, 2016) (overruling objections to Magistrate Judge's rulings on motion for leave to conduct discovery).  The Court concurs with the *Owens* court's reasoning.  In this case, too, it is clear that at present, only Defendant has possession of any relevant audio recordings.  Even the best efforts of Plaintiff and her counsel to decipher notes regarding telephone conversations will not ensure the degree of accuracy that would come with a review of the recordings themselves.  Plaintiff is entitled to production of any audio recordings related to her claim or appeal.

Accordingly, the motion to compel is **granted** as to request for production number 11.

xii.  *No. 12.  Each video recording.*

In request for production number 12, Plaintiff requests a copy of each video recording related to her claim or appeal.  Defendant responded that "it has no videos or other documents

responsive to this [r]equest" and that "[n]o video surveillance was conducted."  (DN 17-4 at 12.)  There appears to be no dispute in relation to this request.  Neither party addressed it in its briefing on the motion to compel.  Nevertheless, the Court finds that to the extent that any video recordings exist and were not included in the administrative record, Plaintiff is entitled to their production for the reasons set forth above in relation to request for production number 11.

>          xiii.  *No. 13.  Defendant's answer to the complaint.*

>          xiv.  *No. 14.  Defendant's affirmative defenses.*

In request for production numbers 13 and 14, Plaintiff requests material documents related to Defendant's answer to the complaint and affirmative defenses, respectively.  For the reasons stated above in relation to interrogatory number 4, Plaintiff is entitled to production of relevant materials that are responsive to request numbers 13 and 14.

Accordingly, the motion to compel is **granted** as to request for production numbers 13 and 14.

>          xv.  *No. 15.  Defendant's answers and responses to written discovery.*

Plaintiff is entitled to production of any and all documents upon which Defendant relies in crafting its responses to Plaintiff's discovery requests.  Specifically, to the extent that the Court has ordered Defendant in the instant memorandum opinion and order to respond to Plaintiff's written discovery, Defendant must produce any and all documents not in the administrative record upon which it relies in responding to the discovery requests.  *See Mullins*, 267 F.R.D. at 520 (requiring defendant to produce any documents to which it "in its interrogatory responses referred . . . outside the administrative record"); *see also Owens*, 2016 U.S. Dist. LEXIS 51350, at *32-33 ("To the extent that this order grants [plaintiff's] motion for

discovery under certain interrogatories, documents related to the information [defendant] provides in response to those interrogatories are also relevant and discoverable.").

Accordingly, the motion to compel is **granted** in relation to request for production number 15.

> xvi. *No. 16.   If any documents have been withheld on the basis of any privilege, a privilege log.*

Plaintiff's sixteenth request for production addresses documents that have been withheld on the basis of privilege and, to the extent that such documents exist, requests a privilege log.  In its response to this request, Defendant stated that notwithstanding certain general objections, "no responsive documents have been withheld on the basis of privilege except for documents created after the present lawsuit was filed."  (DN 17-4 at 14.)  The parties do not address this request in their briefs on the motion to compel.  However, it is worth noting that Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure imposes on Defendant a duty to disclose the existence and identity of any documents which are relevant to a discovery request but which have been withheld due to a claim of  privilege or work product protection.  Further, the Rule directs the withholding party to "describe the nature of the documents, communications, or tangible things not produced or disclosed – and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  To the extent that documents falling within the scope of Rule 26(b)(5)(A) exist, Defendant shall identify them through a privilege log.  *See Owens*, 2016 U.S. Dist. LEXIS 51350, at *33-35.  Finally, lest Defendant have any concern that the request might obligate it to create a privilege log recording all communications with counsel after this lawsuit was initiated, "the request only obligates [it] to identify any documents which are *relevant* to any of

33

[Plaintiff's] requests for production, but for which [Defendant] is withholding production on a claim of privilege or work product protection." *Id.* at *34-35 (emphasis added).

Accordingly, the motion to compel is **granted** as to request for production number 16, subject to the parameters set forth herein.

xvii. *No. 17.   Each document demonstrating any delegation of discretionary authority.*

In request for production number 17, Plaintiff seeks documents that Defendant contends demonstrate a delegation of discretionary authority with respect to deciding Plaintiff's claim and appeal.  In its response to this request, Defendant directed Plaintiff to specific pages of the administrative record that "contain[] language regarding Defendant's discretionary authority" and, further, produced "a copy of the Wells Fargo Benefits Book dated January 1, 2014, which also contains discretionary language."  (DN 17-4 at 15.)  The parties do not address this request in their briefing on the motion to compel.  Indeed, the Court finds that Defendant complied with its discovery obligations by directly citing the administrative record.

Accordingly, the motion to compel is **denied** to the extent that it seeks additional information as to request for production number 17.

xviii. *No. 18.  Long term disability claims unit organizational structure.*

In request for production number 18, Plaintiff requests materials related to the long term disability claims unit organizational structure.  In response to the request, Defendant stated that no such documents would be provided because the request was too broad and not narrowly tailored to a procedural challenge, such as bias or lack of due process, alleged by Plaintiff.  (DN 17-4 at 16.)  Defendant further objected to the extent that the request extends to documents not utilized or relied upon by claim reviewers addressing Plaintiff's claim.  (*Id.*)  Plaintiff argues that

she is entitled to production of such documents so that she may obtain a basic understanding of the organizational structure of the claims and appeals units as well as to ensure that claims and appeals personnel are distinct.   (DN 17 at 22.)   In its response to the motion to compel, Defendant contends that Plaintiff is not entitled to such information, but even so, it provided substantive written responses with such information.   (DN 22 at 33 (citing DN 22-1, its supplemental answers to interrogatories).)

> The Court finds persuasive the *Davis* court's analysis on an identical request:

> > Davis correctly notes that the court in *Gluc* recently found that "the organizational structure of the claims and appeals units is fair game for discovery."  2015 U.S. Dist. LEXIS 104242, *7.  Like the court in *Gluc*, this Court agrees that Davis "is entitled to have a basic understanding of the organizational structure of both the claims and appeals units" of Hartford.  This information will allow Davis to ensure that there is not substantial overlap in violation of 29 CFR 2560.503-1(h)(3)(ii), which mandates that the employee who reviews an adverse benefits determination that is the subject of an appeal nor is he or she the subordinate of such individual.

> > Davis's request is relevant, and the documents will be helpful in his determination of whether or not Hartford's decision makers are in fact separate and distinct.  However, as the Court cautioned in *Gluc*, Hartford "is not required to produce every single document within its possession, custody or control that may touch in any fashion upon the structure of the claims unit and appeals unit." *Id.* at *8.  29 CFR 2560.503-1(h)(3)(ii) is meant to ensure that the same individual does not initially deny a claimant's benefits and then also consider the claimant's appeal. *Id.*

*Davis*, 2015 U.S. Dist. LEXIS 158313, *37-38.  It is not sufficient for Defendant to provide a narrative response that it contends addresses this request.  Rather, it must produce relevant documents within the scope set forth above in *Davis*.

> Accordingly, the motion to compel is **granted** as to request for production number 18.

xix. *No. 19. CompPartners, including contracts, draft reports, final reports, authorization to affix physician signature to final report, dictated opinions, correspondence, emails, notes, diary entries, statistical reports.*

xx. *No. 20.   Taj Jiva, including contracts, draft reports, final reports, authorization to affix physician signature to final report, dictated opinions, correspondence, emails, notes, diary entries, statistical reports.*

In request for production number 19, Plaintiff seeks production of documents regarding CompPartners, the third-party vendor that provided medical opinions related to her claim and those of others insured by Defendant.  Request number 20 mirrors number 19, except that it relates only to Dr. Jiva.   The requests encompass contracts, draft reports, final reports, authorization to affix a physician signature to a final report, dictated opinions, correspondence, emails, notes, diary entries, and statistical reports.  Defendant argues that it properly responded to these requests by producing Dr. Jiva's report as part of the administrative record, as well as other documents related to CompPartners and Dr. Jiva, which also appear in the administrative record.  (DN 22 at 35.)  It asserts that it does not have possession, custody, or control of any draft reports, authorization to affix a physician signature to a final report, or dictated opinions.  (*Id.*)

The Court finds that Defendant's response to-date is inadequate.  Consistent with the Court's conclusions above in relation to CompPartners and Dr. Jiva, and consistent with the rulings in *Davis*, *Owens*, and *Gluc*, the materials sought in request for production numbers 19 and 20 are discoverable.  The list of permitted areas of inquiry recognized by district courts in the Sixth Circuit "includes information relating to the '[c]ontractual connections between [Defendant] and the reviewers utilized in the plaintiff's claim, and the financial payments paid back annually to reviewers."  *Davis*, 2015 U.S. Dist. LEXIS 158313, *23 (citing *Busch*, 2010 U.S. Dist. LEXIS 101881, *4) (citation omitted).  It is not sufficient for Defendant to state that

responsive materials can be found in the administrative record; rather, it must direct Plaintiff to the precise portions of the administrative record at which the documents appear. *See Mullins*, 267 F.R.D. at 514 ("The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which answers cannot be ascertained by a person unfamiliar with them.")  Finally, the limitations set forth above regarding (1) the non-discoverability of matters going to credibility or professional backgrounds of the third parties; and (2) the ten-year time frame for statistical information apply to request for production numbers 19 and 20.

Accordingly, the motion to compel is **granted** as to request for production numbers 19 and 20, subject to the limitations set forth above.

### d.   A Word on Confidentiality Orders

In its response to the motion to compel, Defendant closes its arguments as to each disputed request for production with the following language: "To the extent that the Court disagrees with [Defendant's] request, [Defendant] requests that the Court allow it to produce any additional responsive documents pursuant to an appropriate Protective Order." (*See generally* DN 22 at 27-35.)  Although the terms are often used interchangeably, the Court presumes that Defendant refers to a confidentiality order, rather than a protective order.  If that is what Defendant intends, both parties should be mindful of several things.  First, should Defendant believe that entry of a confidentiality order is necessary before it can produce additional responsive documents, it is incumbent upon Defendant to seek such an order by motion.  The Court does not construe the repeated statement quoted above as a motion for confidentiality order, and the Court will not create or impose such an order *sua sponte*.  Second, and relatedly,

both parties are advised of the undersigned's disinclination to enter confidentiality orders.[2] Third, because a motion for a confidentiality order is a "motion related to discovery," both parties shall adhere to the terms of LR 37.1 with respect to any such motion.  Finally, as is set forth below in the Conclusion section, subsequent to the entry of the instant memorandum opinion and order, both parties are required to request a telephonic conference with the Court prior to filing any additional discovery-related motions.  This includes any motion for a confidentiality order.

### e.  Rule 30(b)(6) Deposition

Plaintiff's motion to compel also seeks an order requiring Defendant to schedule – and, presumably, to participate in – a Rule 30(b)(6) deposition.  (*See* DN 17 at 24-25; DN 16 (notice of 30(b)(6) deposition).)  Plaintiff asserts that she is permitted to take such a deposition in conjunction with her Section 502(a)(1)(B) claim.  Defendant strenuously objects to the deposition notice and has filed a lengthy motion for a protective order in relation to the 30(b)(6) deposition notice (DN 26).  Because the issues surrounding the 30(b)(6) deposition are developed more fully in relation to Defendant's motion for protective order, the Court will rule on the propriety of such a deposition by separate memorandum opinion and order.

### f.  Plaintiff's Request for Sanctions

Plaintiff requests that the Court sanction Defendant for its conduct in relation to the motion to compel.  Specifically, she requests that the Court require Defendant to compensate her

---

[2]       The parties are advised to review Rule 26(c)(1) of the Federal Rules of Civil Procedure, which sets forth the circumstances under which a party or person from whom discovery is sought may move the Court to enter a protective order.  The Court may enter a protective or confidentiality order for good cause.  The movant must certify that he or she has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  Fed. R. Civ. P. 26(c)(1).  Where, however, the parties agree to certain limitations on the use of materials produced in discovery, including for reasons related to confidentiality, entry of a protective order is neither appropriate nor necessary.  Absent some dispute requiring the Court's intervention, the parties need only document the terms of any such agreement and proceed with discovery.

for her attorneys' fees and costs incurred in relation to the motion to compel. She asserts that such a sanction is appropriate because Defendant has refused to respond substantively to her written discovery requests or to schedule a Rule 30(b)(6) deposition. (DN 17 at 25-26.) Plaintiff further states that her "request" that Defendant contact her counsel if it had "any questions as to her discovery" was an effort to create an open dialogue, and that Defendant's failure to comply with this request showed a lack of good faith. (*Id.* at 26.) She requests that the Court warn Defendant that further obstruction of discovery could result in a default judgment. (*Id.*) In response, Defendant argues that no sanctions are appropriate under the circumstances because its position in response to the discovery requests is substantially justified.

Plaintiff's request for sanctions fails, and the Court need not devote significant time to it. To the extent that the request for sanctions is premised on Rule 37(b)(2)(A), it is procedurally deficient. Sanctions are issued pursuant to that subpart on the basis of failure to obey a court order; in this case, Plaintiff's motion for sanctions is based on its assertion that Defendant has failed to adhere to its discovery obligations, not on any purported violation of an order of the Court. Moreover, Plaintiff's insistence as to the purported impropriety of Defendant's actions is transparent. (*See, e.g.*, DN 17 at 27 ("[Defendant] continues to flaunt [sic] its discovery obligations, obstructing discovery and needlessly delaying case resolution.").) In her briefing on the motion to compel, Plaintiff both overstates her position and oversimplifies the current state of the law on discovery in ERISA actions. As the Court's analysis of the motion to compel – as well as the sheer length of this memorandum opinion – demonstrates, the law is evolving in the wake of the *Glenn* case. The law is far from settled as to every aspect of the discovery requests that Plaintiff propounded in this case. Moreover, the fact that the Court granted in part and

denied in part the motion to compel illustrates the fact that Defendant's opposition thereto was substantially justified.  An award of attorneys' fees and costs is simply unwarranted.

Finally, it should be clear from the discussion above regarding Plaintiff's purported instructions to Defendant's counsel that Defendant's failure to comply therewith does not amount to bad faith.  There is no need to belabor this point, as the Court has already found that Defendant was not obligated to comply with Plaintiff's purported instructions and may disregard them.  Defendant is bound by the Federal Rules of Civil Procedure and the orders of this Court, and is not bound by any purported authority asserted by Plaintiff and her counsel.

Accordingly, Plaintiff's request for sanctions is **denied**.

## 2.  Motion for Leave to File Brief regarding *Davis* Decision

A final matter for the Court to resolve at this juncture is Defendant's motion for leave to file a brief regarding the *Davis* decision (DN 45).  The Court concludes that Defendant's motion is well-founded.  Plaintiff filed what is ostensibly a notice of supplemental authority (DN 36) regarding the *Davis* decision.  However, the "notice" is effectively a brief containing excerpts from *Davis* that Plaintiff believes support her position.  The "notice" includes a statement by Plaintiff that *Davis* is "additional persuasive authority" and that the motion to compel in that case is "similar to the discovery" that she seeks in this case.  (DN 36 at 1.)  Additionally, the "notice" contains numerous bolded and italicized block quotations from *Davis*.  (*See generally id.*)  In short, despite being captioned as a notice of supplemental authority, the document amounts to a supplemental brief – outside of what is permissible under the Local Rules – in support of the motion to compel.

The Court concludes that fairness demands that Defendant have an opportunity to respond regarding the persuasiveness, or lack thereof, of *Davis* in relation to this case. Defendant has tendered a relatively short and pointed brief regarding *Davis* (DN 45-1).  The Court finds that Plaintiff will not be prejudiced in any way by the Court's acceptance of Defendant's brief addressing *Davis*.

Based on the foregoing, and as is set forth in the Conclusion section below, Defendant's motion for leave to file a supplemental brief addressing *Davis* (DN 45) is **granted** and its tendered brief (DN 45-1) is **deemed filed**.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion to compel (DN 17) is **GRANTED IN PART** and **DENIED IN PART** for the reasons set forth above.

Specifically, IT IS HEREBY ORDERED as follows:

(1)     The motion to compel is **GRANTED** as to **interrogatory** numbers 4, 5, 7, 8, 9, 10, 11, and 12, and **request for production** numbers 11, 13, 14, 15, 16, 18, 19, and 20, subject to the instructions and limitations set forth above.

(2)     The motion to compel is **DENIED** as to **interrogatory** numbers 2, 3, and 6, and **request for production** numbers 8, 9, and 17.

(3)     The motion to compel is **GRANTED IN PART and DENIED IN PART** as to **request for production** numbers 2 and 3.

(4)     Certain discovery requests appear to be uncontested.  For that reason, the Court does not issue any orders as to the following: interrogatory number 1 and request for production numbers 1, 4, 5, 6, 7, 10, and 12.

(5)     Defendant shall serve supplemental responses to Plaintiff's discovery requests **no later than thirty (30) days after the entry of this order**.  Defendant may disregard the instructions provided by Plaintiff in the text boxes that appear at the top of the page in the interrogatories and requests for production.

(6)     The Court will address Plaintiff's notice of a Rule 30(b)(6) deposition of Defendant by separate order.

(7)     Plaintiff's **request for sanctions** in conjunction with the motion to compel is **DENIED**.

IT IS FURTHER ORDERED that Defendant's motion for leave to file a brief addressing supplemental authority (DN 45) is **GRANTED**.   Defendant's tendered brief (DN 45-1) is DEEMED FILED.

Finally, IT IS HEREBY ORDERED that neither party shall file any discovery-related motion without first (1) complying with the terms of Rule 26(c) as to conferring in good faith with opposing counsel; and (2) requesting and participating in a telephonic conference with the Court.   Either party may request such a conference by contacting Case Manager Theresa Burch at theresa_burch@kywd.uscourts.gov.

cc:  Counsel of record