UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SUZETTE SCOTT-WARREN                                        PLAINTIFF

v.                                                 NO. 3:14-CV-00738-CRS-CHL

LIBERTY LIFE ASSURANCE COMPANY                    DEFENDANT
OF BOSTON

Memorandum Opinion

I.     Introduction

This matter is before the Court on the objections of Defendant Liberty Life Assurance Company of Boston ("Liberty Life") to the magistrate judge's July 13, 2016 Memorandum Opinions and Orders, ECF Nos. 51 & 52. For the following reasons, the Court will sustain Liberty Life's objections in part and overrule the objections in part.

II.     Background

    A.     Allegations in the Complaint

Scott-Warren was insured under a long-term disability insurance policy that Liberty Life issued, underwrote, and administered. Compl. ¶ 8, ECF No. 1. In September 2013, Scott-Warren stopped working because of the physical limitations caused by her disabling condition. *Id*. ¶ 9. She applied to Liberty Life for disability insurance benefits. *Id*. ¶ 10. Liberty Life accepted Scott-Warren's claim of total disability. *See id*. ¶ 10. From September 2013 to March 2014, the insurance company paid her monthly disability benefits. *Id*.

In March 2014, Liberty Life terminated Scott-Warren's disability benefits, even though her physical condition had not improved. *Id*. ¶ 11. Scott-Warren exhausted her appeals. *Id*. ¶ 13. Liberty Life upheld its decision to deny her benefits. *Id*. ¶ 12. On November 5, 2014, Scott-

Warren filed suit against Liberty Life under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). *Id*. ¶ 17. She seeks to recover benefits that she asserts were wrongfully denied under her insurance policy. *Id*.

  B.  <u>Motion to Compel Discovery</u>

Scott-Warren moved to compel discovery. Scott-Warren's Mot. Compel Disc., ECF No. 17. In her motion to compel, she asserted that Liberty Life had terminated her benefits for its own financial gain and had relied upon a third-party vendor, CompPartners, to substantiate its decisions. *Id*. at 2. She also asserted that CompPartners "ha[d] shown a high if not absolute propensity of supporting Liberty's decision, so as to maintain the business it receives from Liberty." *Id*. She maintained that Liberty Life refused to comply with her discovery requests. *Id*. at 3. Scott-Warren clarified that the insurance company had failed to substantively respond to her written discovery requests and refused to cooperate in scheduling depositions. *Id*. She requested the following relief: (1) Liberty Life's substantive responses to written discovery requests, (2) Liberty Life's cooperation in scheduling depositions, (3) fees and costs related to her motion to compel, and (4) an instruction to Liberty Life that its failure to comply with the Court's order on the motion to compel could result in a default judgment. *Id*.

Liberty Life filed a response in opposition. Liberty Life's Mem. Opp'n Mot. Compel, ECF No. 22. Liberty Life argued that Scott-Warren's motion to compel should not be granted because she was not entitled to discovery outside the administrative record, and, alternatively, because she had requested discovery that was beyond the scope permitted in an ERISA action. *Id*. at 3, 13. Scott-Warren replied. Scott-Warren's Reply Mot. Compel, ECF No. 30.

On July 13, 2016, the magistrate judge issued a memorandum opinion and order addressing the parties' arguments related to Scott-Warren's motion to compel. Mem. Op. &

Order, ECF No. 51. In relevant part, the magistrate judge determined that, under current case law, ERISA plaintiffs may obtain discovery outside the administrative record when the discovery supports an allegation that the plan administrator was biased. *Id*. at 6–7. The magistrate judge then found that Scott-Warren sufficiently alleged that Liberty Life had a conflict of interest when it reviewed her claim. *Id*. at 10. The magistrate judge thus concluded that Scott-Warren was entitled to discovery related to whether Liberty Life operated under a conflict of interest. *Id*. He then addressed Scott-Warren's individual discovery requests and granted the motion to compel for only those that concerned Liberty Life's alleged conflict of interest. *Id*. at 12–38.

    C.    <u>Rule 30(b)(6) Deposition</u>

The same day that she moved to compel discovery, Scott-Warren served Liberty Life with notice of a Rule 30(b)(6) deposition. Scott-Warren's Notice of 30(b)(6) Dep., ECF No. 16. She requested that Liberty Life provide a designated representative to testify about thirteen categories of "matters known or reasonably available to Liberty," such as "Liberty's compliance with applicable insurance laws and regulations." *Id*. at 3–4. She also requested that Liberty Life produce eleven categories of documents, the final category of which included eight subparts. *Id*. at 4–5.

Liberty Life moved for a protective order against Scott-Warren's noticed Rule 30(b)(6) deposition. Liberty Life's Mot. Protective Order, ECF No. 26. As it did in response to Scott-Warren's motion to compel, Liberty Life argued that a court's review of a denial of benefits under ERISA is confined to the administrative record. Liberty's Mem. Supp. Mot. Protective Order 4–6, ECF No. 26-1. Liberty Life also contended that recent district court decisions from the Sixth Circuit that permitted ERISA plaintiffs to seek discovery outside of the administrative record are not controlling and need not be followed in this case. *Id*. at 6–11.

3

In response, Scott-Warren maintained that Liberty Life's motion was "replete with meritless objections indicative of its lack of good faith compliance with its discovery obligations." Scott-Warren's Resp. Mot. Protective Order 2, ECF No. 34. She further argued that the law entitled her to all the discovery that she sought. *Id*. at 2, 9. Scott-Warren also moved for sanctions for Liberty Life's failure to appear at the deposition. Scott-Warren's Mot. Sanctions, ECF No. 28.

On July 13, 2016, the magistrate judge entered an memorandum opinion and order resolving the discovery issues related to Scott-Warren's Rule 30(b)(6) deposition notice. Mem. Op. & Order, ECF No. 52. Consistent with the memorandum opinion and order addressing Scott-Warren's motion to compel, the magistrate judge determined that Scott-Warren's allegation that the claims administrator operated under a conflict of interest was sufficient to permit her to obtain discovery outside the administrative record, including depositions. *Id*. at 6, 9. The magistrate judge thus found that Scott-Warren was entitled to take a Rule 30(b)(6) deposition of Liberty Life's representative. *Id*. at 9. He then addressed the thirteen categories about which Scott-Warren had requested Liberty Life's representative testify and the eleven categories of requested documents, and narrowed the topics to those addressing only the alleged conflict of interest. *Id*. at 10–18.

Liberty Life now objects to the magistrate judge's rulings on Scott-Warren's motion to compel discovery and on Liberty Life's motion for a protective order. Liberty Life's Objections to Ct.'s July 13, 2016 Mem. Op. & Order 4–12, ECF No. 53.

III.     Legal Standard

The Court must consider a timely objection to a magistrate judge's order on a nondispositive matter and "modify or set aside any part of the order that is clearly erroneous or is

4

contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b) (providing for a district court's reconsideration of a magistrate judge's determination of a pretrial matter that is "clearly erroneous or contrary to law").

The magistrate judge's factual findings are reviewed under the clearly erroneous standard. *Heights Cvmt. Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id*. Under the clearly erroneous standard, the Court does not ask whether the magistrate judge reached "the best or only conclusion that can be drawn from the evidence." *Knox v. Prudential Ins. Co. of Am.*, No. 13-CV-00424-CRS, 2014 U.S. Dist. LEXIS 170597, at *4 (W.D. Ky. Dec. 9, 2014) (citing *Tri-Star Airlines, Inc. v. Willis Careen Corp. of L.A.*, 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999)). "Rather, the clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable." *Id*.

In comparison, the magistrate judge's legal conclusions are subject to the plenary "contrary to law" standard. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992). A legal conclusion is contrary to law when it contradicts or ignores applicable legal principles found in the Constitution, statutes, and case precedent. *Id*. The Court must thus exercise "independent judgment" in reviewing the magistrate judge's legal conclusions. *Id*.

IV.   <u>Discussion</u>

Liberty Life argues that there are several errors in the magistrate judge's rulings on Scott-Warren's motion to compel and on its motion for a protective order. Liberty Life first asserts that the Court should not permit discovery based on Scott-Warren's allegation that a conflict of interest interfered with the claims administration process. Liberty Life's Objections to Ct.'s July

13, 2016 Mem. Op. & Order 4–12, ECF No. 53. Second, Liberty Life contends that, even if an allegation of a conflict of interest permits a plaintiff to obtain discovery, the magistrate judge's rulings allow Scott-Warren to seek evidence beyond the permitted scope of discovery in ERISA cases. *Id*. at 12–22.

    A.    <u>Objections to Discovery Stemming from Alleged Conflict of Interest</u>

As an initial matter, Liberty Life argues that "because the only factual basis for Plaintiff's motion to compel was her allegation that Liberty Life is both the decisionmaker and payor of benefits under the Policy, Judge Lindsay's decision permitting discovery in this case is contrary to law." Liberty Life's Objections to Ct.'s July 13, 2016 Mem. Op. & Order 12, ECF No. 53. In *Metropolitan Life Insurance Co. v. Glenn*, the Supreme Court held that a conflict of interest arises regarding an administrator's denial of benefits when "the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." 554 U.S. 105, 108 (2008).

Relying on *Glenn*, courts in the Western District of Kentucky have held that the existence of a conflict of interest is enough to permit discovery outside of the administrative record. *See, e.g., Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-CV-00507-TBR, 2015 U.S. Dist. LEXIS 158313, at *8 (W.D. Ky. Nov. 24, 2015); *Myers v. Anthem Life Ins. Co.*, No. 3:14-CV-948-JHM-CHL, 2016 U.S. Dist. LEXIS 37411, at *17 (W.D. Ky. Mar. 21, 2016). In *Knox v. Prudential Insurance Company of America*, this Court agreed that discovery beyond the administrative record is permitted in ERISA cases when a conflict of interest is alleged, although the court retains the discretion to define the outer limits of that discovery. 2014 U.S. Dist. LEXIS 170597, *6–7 (W.D. Ky. Dec. 9, 2014).

Liberty Life fails to provide persuasive evidence that discovery should not be permitted in this case based on Scott-Warren's allegation that it had a conflict of interest when it reviewed her claim. The case law cited by Liberty Life does not account for the recent changes in ERISA law initiated by the Supreme Court's ruling in *Glenn*. Liberty Life also does not provide a convincing reason for why the Western District should deviate from its recent rulings on the matter. Accordingly, this Court will not disturb the magistrate judge's ruling that discovery is permitted based on the allegation that Liberty Life had a conflict of interest.

B. Objections to the Scope of Discovery

Liberty Life argues in the alternative that the following magistrate judge's rulings allow Scott-Warren to seek evidence beyond the permitted scope of discovery in ERISA cases: (1) the rulings that permit Scott-Warren to obtain the insurance company's answer to the complaint and affirmative defenses; (2) the rulings that allow Scott-Warren to obtain statistical information, and (3) the rulings that permit Scott-Warren to take a 30(b)(6) deposition of the insurance company's representative. Liberty Life's Objections to Ct.'s July 13, 2016 Mem. Op. & Order 12–22, ECF No. 53.

i. *Liberty Life's Answer to the Complaint and Affirmative Defenses*

The magistrate judge granted Scott-Warren's motion to compel Liberty Life's answer to interrogatory number 4, which states, "Provide the material factual basis for each affirmative defense stated in your answer to Plaintiff's complaint." Mem. Op. & Order 15, ECF No. 51; Interrog. 4, ECF No. 17-1. Based on this ruling, the magistrate judge also granted Scott-Warren's motion to compel Liberty Life's production number 15, which asked for documents related to the insurance company's answer to the complaint and its affirmative defenses. Mem. Op. & Order 32, ECF No. 51. Consistent with these determinations, the magistrate judge denied Liberty Life's

7

motion for a protective order for these same areas of inquiry. Mem. Op. & Order 10, ECF No. 52.

Liberty Life contends that the answer to the complaint and its affirmative defenses relate to the merits of the case —not the alleged conflict of interest— and thus interrogatory number 4 and production number 15 seek discovery forbidden under ERISA. Liberty Life's Objections to Ct.'s July 13, 2016 Mem. Op. & Order 13–14, ECF No. 53.

In *Davis v. Hartford Life & Accident Insurance Co.*, the United States District Court for the Western District of Kentucky held that interrogatories that seek to clarify the basis for or the scope of an adversary's legal claims are permissible forms of discovery in ERISA actions. No. 3:14-CV-00507-TBR, 2015 U.S. Dist. LEXIS 158313, at *15 (W.D. Ky. Nov. 24, 2015). Such "contention" interrogatories do not seek discovery that addresses the merits of the case but rather instead seek to illuminate the issues to be resolved. *Id*. at *16.

Liberty Life fails to provide the Court with a persuasive reason for why it should not be required to provide Scott-Warren with discovery related to its answers and affirmative defenses. Scott-Warren's discovery requests do not seek to resolve the merits of the case; instead, drawing from *Davis*, these requests attempt to assist the parties in defining the issues, including whether Liberty Life reviewed the disability benefits claim while operating under a conflict of interest. Thus, this Court will overrule Liberty Life's objection to the magistrate judge's rulings that permit Scott-Warren to seek discovery of the insurance company's answer to the complaint and affirmative defenses.

    ii. *Statistical Information*

The magistrate judge granted Scott-Warren's motion to compel Liberty Life's answer to interrogatory numbers 11, 12, 19, and 20. These four interrogatories asked for documents and

statistical information relating to Liberty Life's use of a third party contractor to review disability claims. Mem. Op. & Order 25–26, 36–37, ECF No. 51. For example, interrogatory number 11 seeks "[t]he number of claims for which Defendant has retained CompPartners to perform a review related to a disability claim or appeal." *Id*. at 24. Consistent with rulings from other courts in the Sixth Circuit, the magistrate judge limited Liberty Life's response to documents and information for the years 2006 to the present. *Id*. at 27.

Liberty Life first maintains that "Judge Lindsay's ruling on this issue is contrary to the law and/or clearly erroneous because the statistical information sought by Plaintiff is of very limited, if any, relevance and certainly not warranted in light of the time consuming and costly review of its files that Liberty Life would have to undertake." Liberty Life's Objections to Ct.'s July 13, 2016 Mem. Op. & Order 15, ECF No. 53. Liberty Life explains that the discovery requests would require it to perform a file-by-file review of the hundreds of thousands of claims submitted in the relevant time period because it does not have the information readily available in aggregate form. *Id*. at 15. The insurance company cites to the proportionality and relevance requirements of Federal Rule of Civil Procedure 26(b)(1) in support of this objection. *Id*.

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The December 2015 revisions to Federal Rule of Civil Procedure 26(b)(1) restored the importance of proportionality in defining the scope of discovery. Advisory Committee Notes to the 2015 Amendments to Rule 26. The amendment was intended to reinforce that parties have an obligation to consider the proportionality factors when making discovery requests and objections. *Id*. Thus, the amendment to Rule 26(b)(1) did not change the substance of the rule's discovery requirements.

9

For example, though discussed in terms of burdensomeness, relevance and proportionality appear in the United States District Court for the Eastern District of Kentucky's 2009 decision in *Pemberton v. Reliance Std. Life Ins. Co.*, No. 08-86-JBC, 2009 U.S. Dist. LEXIS 2070 (E.D. Ky. Jan. 13, 2009), a case cited with approval in *Davis*, 2015 LEXIS at *29–30. In *Pemberton*, the plaintiff sued the defendant, an insurance company, after it had terminated his benefits on his long-term disability policy under ERISA. 2009 U.S. Dist. LEXIS at *1. The plaintiff sought information about a potential conflict of interest involving the individuals who reviewed his claim. *Id*. at *7. The court found that the statistical information sought by the plaintiff would be relevant in determining whether the claims reviewers operated under a conflict of interest. *See id*. at *8. The defendant argued that it would be unduly burdensome to collect the requested statistical data. The court narrowed the plaintiff's discovery request to include only those individuals who had been involved in the plaintiff's claim and further limited the discovery request to the previous ten years. *Id*. at *9–10. Because many of the involved reviewers had worked with the defendant for fewer than ten years, the court found that this narrowed discovery request was not overly burdensome. *Id*. at *10.

In this case, the statistical data sought by Scott-Warren is relevant in determining whether a conflict of interest affected the administration of her claim. To ensure that the discovery request is proportional and consistent with *Pemberton*, the Court will modify the magistrate judge's order and require Liberty Life to answer interrogatories number 11, 12, 19, and 20 with regard to Dr. Tal Jiva, the physician who reviewed her claim. Liberty Life will not be required to submit information about CompPartners' other reviewers who were not involved in Scott-Warren's claim.

Liberty Life secondly argues that the magistrate judge erred in requiring it to produce the requested information for the period beginning 2006 because Scott-Warren identified the relevant period as beginning on November 5, 2009. Liberty Life's Objections to Ct.'s July 13, 2016 Mem. Op. & Order 15, ECF No. 53. Scott-Warren states in her request for production, "Unless otherwise specifically stated, the time period applicable shall be from November 5, 2009 to the present." Scott-Warrant Req. Produc. 3, ECF No. 17-2. Interrogatories number 11, 12, 19, and 20 do not identify a different time period. Thus, the Court will modify the magistrate judge's order and require Liberty Life to answer the interrogatories number 11, 12, 19, and 20 beginning on November 5, 2009, and, as previously discussed, only with regarding claims submitted by Dr. Tal Jiva.

### iii. Rule 30(b)(6) Deposition Notice

The magistrate judge determined that Scott-Warren is entitled to take a Rule 30(b)(6) deposition of Liberty Life's designated representatives. Mem. Op. & Order 9, ECF No. 52. The magistrate judge, however, limited the categories of information and documents sought to those concerning Liberty Life's alleged conflict of interest. *See id.* at 9, 10–18.

Liberty Life objects to the magistrate's order on several grounds. First, Liberty Life appears to argue that Scott-Warren has not yet shown good cause for a deposition, as defined by Federal Rules of Civil Procedure 26(b)(2)(C). Liberty Life's Objections to Ct.'s July 13, 2016 Mem. Op. & Order 18, ECF No. 53. Liberty Life explains that allowing a deposition without having shown good cause will add time and expense to the litigation. *Id.*

The majority of courts, including those in the Western District of Kentucky, have rejected the efforts of defendant insurers to prohibit depositions in ERISA cases involving plaintiffs who claim that their disability benefits were wrongfully denied. *Davis v. Hartford Life & Accident*

11

*Ins. Co.*, No. 3:14-CV-00507-TBR, 2015 U.S. Dist. LEXIS 158313, *40–41 (W.D. Ky. Nov. 24, 2015) (citing *Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 419 (W.D. Ky. 2015)); *see also Blackwell v. Liberty Life Assurance Co.*, 2016 U.S. Dist. LEXIS 73317, at *49–50 (W.D. Ky. May 19, 2016).

Liberty Life does not provide a persuasive reason to deviate from this case law. In support, Liberty Life relies on two cases from outside the Western District of Kentucky, *Geiger v. Pfizer, Inc.*, 271 F.R.D. 577 (S.D. Ohio) and *Bottoms v. Liberty Life Assurance Co. of Boston*, No. 11-CV-01606, 2011 U.S. Dist. LEXIS 143251 (D. Colo. Dec. 13, 2011). But these cases are unhelpful for Liberty Life. In *Geiger*, the plaintiff sued the defendants, several insurance companies, under ERISA for denial of her long-term insurance benefits. 271 F.R.D. at 579. The plaintiff sought to depose the defendants' disability claim manager to determine whether the defendants operated under a conflict of interest. *Id*. The defendants argued that the plaintiff could not obtain discovery "because she ha[d] failed to make a threshold good cause showing for such discovery." *Id*. at 581. The court disagreed. *Id*. Later, the court denied the plaintiff's request for a deposition because the discovery request were insufficiently defined— not because the plaintiff had failed to show good cause for a deposition. *See id*. at 583–84.

*Bottoms* is equally unpersuasive. In *Bottoms*, the plaintiff sued the defendant, an insurance company, for long term disability benefits under ERISA. 2011 U.S. Dist. LEXIS at *2. Unlike in this case, the plaintiff moved to depose the defendant's representative "after written discovery disclose[d] more information about their prior claims involvement." *Id*. at *5. Moreover, in resolving the claim, the district court explicitly relied on case law from the United States Court of Appeals for the Tenth Circuit that clarified the scope of discovery in ERISA cases. *Id*. at *8–9. Given that this Court is not conclusively bound by law from the Tenth Circuit,

the facts of *Bottoms* are different than in this case, and *Geiger* does not apply, the Court declines to disturb the magistrate judge's rulings on the Rule 30(b)(6) deposition for lack of good cause.

Liberty Life secondly argues that the deposition topics are identical to the written discovery requests and thus are not proportional to the needs of the case. Liberty Life's Objections to Ct.'s July 13, 2016 Mem. Op. & Order 18–21, ECF No. 53. Liberty Life does not explain why or how the deposition topics and materials to be produced are identical. Nor does it explain why or how the identical discovery requests are disproportional to the needs of the case. Thus, the Court will not modify the magistrate rulings on the Rule 30(b)(6) deposition on this ground.

Liberty Life thirdly asserts that, even if it must answer Scott-Warren's written discovery requests and participate in the noticed Rule 30(b)(6) deposition, the magistrate judge's ruling on the motion for a protective order regarding Scott-Warren's request for production number 17 is inconsistent with his ruling on Scott-Warren's motion to compel. *Id*. at 21. Scott-Warren's request for production number 17 asks for "[e]ach document demonstrating any delegation of discretionary authority." *See* Liberty Life's Objections & Resp. to Pl.'s Requests for Produc. 15, ECF No. 17-4 (listing discovery requests). Liberty Life responded by directing Scott-Warren to the administrative record. *Id*. at 15–16. The magistrate judge denied Scott-Warren's request for production for any additional documents beyond the administrative record. Mem. Op. & Order 34, ECF No. 51. The magistrate judge then denied Liberty Life's motion for a protective order for the request for production number 17, consistent with the ruling on the request for production.

The magistrate judge's rulings on the request for production and the motion for a protective order are consistent: the magistrate judge permitted the plaintiff to only search the

13

administrative record for documents demonstrating any delegation of discretionary authority. Accordingly, this Court will not disturb the magistrate judge's rulings on these requests for lack of consistency.

Liberty Life fourthly maintains that the magistrate judge's ruling on the sixth area of inquiry for the deposition should be interpreted to be consistent with other rulings regarding Scott-Warren's request for information related to vendors and/or third party medical reviewers. The sixth deposition category asks that Liberty Life's representative be able to testify about its "contracts, relationship, and utilization of medical review vendors, including CompPartners and Tal Jiva." Scott-Warren's Notice of 30(b)(6) Dep. 3, ECF No. 16. The magistrate judge denied Liberty Life's motion for a protective order on this sixth area of inquiry "[c]onsistent with the Court's rulings on interrogatory numbers 7, 8, 11, and 12." Mem. Op. & Order 11, ECF No. 52.

The magistrate judge interpreted interrogatory numbers 7, 8, 11, and 12 as requesting information related only to Scott-Warren's claims against Liberty Life. Mem. Op. & Order 20–22, 24–27, ECF No. 51. The magistrate judge required Liberty Life to adhere to guidance from *Davis*. *Id*. at 22, 26. Importantly, with regards to interrogatory numbers 7 and 8, the magistrate judge mandated:

> [Defendant] should respond to the interrogator[y] with information concerning its [] connections[, contractual or otherwise,] to the third parties and the financial payments paid to them annually along with information concerning any documentation of administrative processes designed only to check the accuracy of grants of claims. However, [Defendant] is not required to provide any response with regards to the credibility or professional backgrounds of the third parties. [Defendant] is also not required to provide documents pertaining to other claimants as those documents are not relevant to [Plaintiff's] claims, and they would undoubtedly contain confidential information "that could not be produced without raising serious HIPAA and privacy concerns that make production of such documents far more burdensome than potentially relevant."

*Id*. at 22 (citing *Davis*, 2015 U.S. Dist. LEXIS 158313 at *24).

This Court will thus modify the magistrate judge's ruling on the sixth area of inquiry for the deposition as requiring Liberty Life to testify about "contracts, relationship, and utilization of medical review vendors, including CompPartners and Tal Jiva" consistent with the rulings on interrogatory numbers 7, 8, 11, and 12. Liberty Life must answer questions concerning is connections, contractual or otherwise, to CompPartners and Dr. Tal Jiva and the financial payments paid to them annually, along with information concerning any documentation of administrative processes designed only to check the accuracy of grant of claims. But Liberty Life is not required to provide any response regarding the credibility or professional backgrounds of CompPartners or Dr. Tal Jiva. Liberty Life is not required to provide documents pertaining to other claimants because those documents are not relevant to Scott-Warren's claims, and they would contain confidential information that could raise serious HIPPA concerns and would make production of documents far more burdensome than potentially relevant. Additionally, as discussed above, the Court will modify the relevant time period to begin on November 5, 2009.

V.  Conclusion

The Court will sustain in part and will overrule in part Liberty Life's objections to the magistrate judge's July 13, 2016 Memorandum Opinions and Orders, ECF Nos. 51 & 52.

- The Court will require Liberty Life to answer the interrogatory numbers 11, 12, 19, and 20 regarding claims submitted only by Dr. Tal Jiva for the time period beginning on November 5, 2009.

- The Court will require Liberty Life's representative to testify about the sixth deposition topic consistent with the rulings on interrogatory numbers 7, 8, 11, and 12. Liberty Life must answer questions concerning is connections, contractual or otherwise, to CompPartners and Dr. Tal Jiva and the financial payments paid to them annually, along

15

with information concerning any documentation of administrative processes designed only to check the accuracy of grant of claims. Liberty Life is not required to provide any response regarding the credibility or professional backgrounds of CompPartners or Dr. Tal Jiva. Liberty Life is not required to provide documents pertaining to other claimants.

A separate order will be entered in accordance with this memorandum opinion.

September 29, 2016

**Charles R. Simpson III, Senior Judge
United States District Court**